```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF NEW YORK


 UNITED STATES OF AMERICA,    *         Docket Number:
                                        21-CR-00148-JLS-1
                              *
                              *         Buffalo, New York
              v.              *         April 22, 2022
                              *         11:01 a.m.
                              *
 JOHN DI BLASI,               *         STATUS CONFERENCE
                              *
              Defendant.      *
                              *
 * * * * * * * * * * * * * *


                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JOHN L. SINATRA, JR.
                   UNITED STATES DISTRICT JUDGE



APPEARANCES:


For the Government:          TRINI E. ROSS,
                             UNITED STATES ATTORNEY,
                             By JOEL VIOLANTI, ESQ.,
                             Federal Centre,
                             138 Delaware Avenue,
                             Buffalo, New York  14202,
                             Appearing for the United States.


For the Defendant:           FEDERAL PUBLIC DEFENDER'S OFFICE
                             By JEFFREY T. BAGLEY, ESQ.,
                             Assistant Federal Public Defender,
                             300 Pearl Street,
                             Suite 200,
                             Buffalo, New York  14202.



The Courtroom Deputy:        KIRSTIE L. HENRY
```

```
 1   The Court Reporter:           BONNIE S. WEBER, RPR,
                                   Notary Public,
 2                                 Robert H. Jackson Courthouse,
                                   2 Niagara Square,
 3                                 Buffalo, New York  14202,
                                   Bonnie_Weber@nywd.uscourts.gov.
 4
 5           Proceedings recorded by mechanical stenography,
                   transcript produced by computer.
 6
 7              (Proceedings commenced at 11:01 a.m.)
 8
 9           THE CLERK:  All rise.
10           The United States District Court for the Western
11   District of New York is now in session.  The Honorable John
12   Sinatra presiding.
13           THE COURT:  Please be seated.
14           THE CLERK:  United States versus John Di Blasi,
15   Case Number 21-CR-148.  This is a date set for a status
16   conference.
17           Counsel, please state your appearances for the record.
18           MR. VIOLANTI:  Joel Violanti for the Government.
19           MR. BAGLEY:  Good morning, Judge.  Jeff Bagley for
20   John Di Blasi.
21           THE COURT:  Okay.  Good morning, Counsel.
22           Good morning, Mr. Di Blasi.
23           THE DEFENDANT:  Good morning, Your Honor.
24           THE COURT:  We're here today for a status conference
25   on the violation of supervised release petition.
```

1           Judge Schroeder conducted the initial appearance, I
2   believe, on the 18th of April last week.  Monday, I think it was
3   this past Monday.
4           Since that appearance an amended petition has been
5   submitted to the Court that contains an additional charge.
6           Mr. Bagley, did you have a chance to speak with your
7   client --
8           **MR. BAGLEY:**  Yes.
9           **THE COURT:**  -- about the amended petition as well?
10          **MR. BAGLEY:**  Yes.
11          **THE COURT:**  And about today's proceeding?
12          **MR. BAGLEY:**  Yes.
13          **THE COURT:**  How does your client wish to proceed?
14          **MR. BAGLEY:**  Well, Judge, the most important matter
15  for Mr. Di Blasi is his detention, obviously, Judge.
16          He is at Niagara County Jail.  We did ask for release
17  before the magistrate judge.  It's difficult to, in my
18  experience, Judge, to have my clients get released before the
19  magistrate when there is an arrest warrant that's taken into
20  consideration.
21          So I would apply for before Your Honor, who issued the
22  warrant, to -- to reconsider the release status of Mr. Di Blasi.
23  He -- you know, Mr. Di Blasi, Judge, is willing to abide by
24  whatever conditions the Court imposes, including more strenuous
25  ones of an ankle monitor.

1            Judge, it's not -- you know, I don't think anybody is
2   going to make the argument that Mr. Di Blasi is a flight risk.
3   The allegations in the petition are essentially that he was
4   lying about his -- the type of work that he was doing, Judge.
5            And we're not in a position at this point to be able
6   to defend the merits of the charges, however, I would note that
7   of the vast things that this Court sees, obviously, part of the
8   Court's job is to, kind of, evaluate on a relative basis the
9   severity of the types of convictions and whether that merits
10  putting somebody in jail, such that they restrict their freedom
11  while charges are pending, Judge.
12           And I would submit that this is somewhere near the
13  lower end of the severity of charges that this Court sees.
14           Again, Mr. Di Blasi is willing to follow and abide
15  whatever kind of restrictive conditions, whether that's a
16  curfew, whether that's an ankle monitor, Judge.
17           But, unfortunately, right now at Niagara County Jail,
18  it is the most severe and strict conditions that anybody can be
19  placed over.
20           Not only in jail, Judge, but he's now in solitary
21  confinement at the jail, because he has to suffer through a
22  14-day quarantine period.
23           So he's by himself, essentially, in a cell for
24  23 hours a day, Judge.  And I just don't think that's warranted
25  based on -- based on Mr. Di Blasi's history or the severity of

1  the charges against him.

2  He is a navy vet, Judge.  He's been honorably
3  discharged.  His aunt and uncle are here to support him.  His
4  uncle actually stopped by my office and dropped off some
5  paperwork that may go to the merits of the allegations and that
6  is whether or not he was, in fact, authorized to conduct the
7  massages.

8  I don't think it's as clearcut as the petition makes
9  it out to be.  Mr. Di Blasi does have some qualifications
10 that -- that, regardless of whether he is technically licensed
11 as a masseuse, may allow him to conduct massages.

12 So, Judge, for those reasons, we would ask that you
13 consider releasing Mr. Di Blasi, and that way we can defend
14 against these charges and Mr. Di Blasi doesn't have to suffer
15 under these very restrictive conditions of solitary confinement.

16 **THE COURT:**  What about the flight or attempted flight
17 to Bogota the last time around?

18 **MR. BAGLEY:**  Judge, that is -- I don't know anything
19 about that, so --

20 **THE COURT:**  Mr. Violanti will probably enlighten us.

21 **MR. VIOLANTI:**  Judge, it's my understanding -- I think
22 Mr. Taberski has more information -- but it's my understanding,
23 while his other charge is pending in the other district, we had
24 information that the defendant was taking off.

25 They actually found him with a flight ticket in hand

1  about to get -- about to board an airplane going to Bogota,
2  Columbia.
3          They arrested him at that point in time and took him
4  to answer his charges.  I'm not sure that that's completely
5  accurate.  I think Mr. Taberski could clean it up.
6          **PROBATION OFFICER:**  Yes, Your Honor.  According to the
7  presentence report, upon the indictment being filed in the
8  Southern District of Georgia, Mr. Di Blasi had a flight
9  scheduled to Bogota, Columbia, and I believe they apprehended
10 him at the airport.
11         Not only is he a flight risk, Your Honor, but I would
12 like to address his a danger to the community.
13         And normally when we are talking about danger to the
14 community, we're talking about violence, but it's not the only
15 form of danger as, Your Honor is aware.
16         And Mr. Di Blasi has a history of taking advantage of
17 people in vulnerable situations.  With the incident offense, it
18 was people addicted to narcotics.
19         He was giving out prescriptions to total strangers
20 that he met at bars.
21         He was trading prescriptions for oral sex, according
22 to the presentence report, for cocaine for his use, and he was
23 sentenced for that.
24         He spent less than three years in the Bureau of
25 Prisons.  He gets out and he gets a job using an alias, John

1  Aquila, which I have evidence of, from the spa that he was
2  working at.
3       And he was working as a massage therapist without a
4  license, and he knew he didn't have a license.
5       Furthermore, he tried to tell the spa owner that he
6  could work under a licensed massage therapist until he obtained
7  his license.
8       However, the State investigator, who is further
9  investigating his illegal conduct, confirmed that he didn't have
10 the required permit that one would need in order to work under a
11 licensed therapist.
12      Now, in this case, he is taking advantage of different
13 people in vulnerable situations.
14      There's the spa owner who is desperate to sell her
15 place of business.  He lies to her about who he is and then she
16 finds out that he's a convicted felon.
17      He goes around calling himself Dr. Johnny, including
18 to us in the probation office, which is irrelevant, but to
19 people in the community and the customers that are going to the
20 spa, they don't know that he's a physician who is a convicted
21 felon.
22      He's not a licensed physician.  He uses, you know,
23 this identity as Dr. Johnny to make people think that he's
24 reputable, and he's not.
25      You know, we have only begun to scratch the surface of

1   what's going on here.  He saw over 260 customers at the spa.
2          One of them came forward after the massage and
3   complained that he was inappropriate.  He asked her out on a
4   date.
5          He told her that he would find her phone number in the
6   computer records there if she didn't want to give it to him.
7          And we'll see what the other customers say, because
8   there is over 250 of them and we will see if anything else went
9   on.
10         But he does present a danger to the community and he
11  has a history of being a flight risk.
12         **MR. BAGLEY:**  So, Judge, if I could address some of
13  that?
14         **THE COURT:**  Yes.  Just give me one minute, Mr.
15  Bagley -- maybe a couple.
16         **MR. BAGLEY:**  Sure.
17         **THE COURT:**  All right.  Let me hear from the
18  Government, since we kind of went from the Government over to
19  Mr. Taberski, and then I will give you a chance to respond to
20  both of them, okay?
21         **MR. BAGLEY:**  Okay.
22         **MR. VIOLANTI:**  Judge, I support Mr. Taberski's
23  feelings on this.  We discussed much of this before, Jude
24  Schroeder, although I was not present.
25         We didn't address the risk of flight, I admit that,

and I understand why Mr. Bagley would not have that information. I believe it was contained in the PSR from the other district.

But a lot of the circumstances that were presented to Judge Schroeder can be even further detailed by Mr. Taberski and actually, kind of, reiterated here today before you.

And I know it may not be the most severe type of charge, as Mr. Bagley said, but it's not the severity that we're worried about, Judge.

It's really -- the whole issue is whether there are circumstances or a set of circumstances that can assure this Court, probation, the Government and the defense that the defendant is going to comply with the conditions of his release.

And I think he's demonstrated throughout the course, throughout his history, going from his prior charge continuing up to today, that he continues to lie and be less than truthful to them.

It's very difficult.  I couldn't imagine probation's job to trying to manage this individual.

I don't know what type of circumstances can prevent him from doing that, from being purposely dishonest, not telling the truth to probation, when they have all the reason in the world to know the truth of the information to adequately supervise him.

For those reasons, Judge, until the defendant can demonstrate something more, I think detention is the just

1  result.

2  **THE COURT:** Okay.

3  Mr. Bagley --

4  **MR. BAGLEY:** Thank you, Judge. So with respect to the
5  flight, I appreciate Mr. Violanti pointing out we did have an
6  entire initial appearance where detention was argued and nothing
7  was mentioned about that.

8  The probation department did not indicate that it was
9  pursuing that line of argument.

10  Judge, obviously, it's in the PSI. Apparently, that's
11  where it's coming from, but the probation department has many
12  conversations with the prosecutors in these types of cases and
13  never reach out to the defense, and that's a problem.

14  The second thing, Judge, is that -- you know, this
15  isn't a time to have a wholesale character assassination of my
16  client.

17  The determination is limited to, as Mr. Violanti
18  points out, whether or not there is conditions that can assure
19  this Court that he's going to appear and whether he's a danger.

20  And I think that there is -- there are conditions that
21  satisfy both of those things.

22  With respect to the flight, Judge, whether this is a
23  Grade C or a Grade B violation, his criminal history category is
24  one, meaning that he is looking at a guideline sentence.

25  I understand it's just a guideline, but a guideline

1  sentence of three to nine months or four to ten months.

2           For someone to flee to Bogota over a three to nine

3  month violation of supervised release is, I submit, Judge, is

4  patently unreasonable.

5           The second condition that the Court can impose is a

6  home incarceration condition, which would not allow him to work,

7  not allow him to go out into the community, where the probation

8  is concerned that he is a danger.

9           It would keep him in his home.  And it would -- and it

10 would allay any of the concerns that probation has mentioned

11 today.

12          So the -- the Court is obligated, as the Court knows,

13 to impose the least restrictive condition that will allow the

14 Court to satisfy itself.

15          And I believe that is the least restrictive condition,

16 Judge.

17          **THE COURT:**  Mr. Taberski, any final comments?

18          **PROBATION OFFICER:**  Judge, I would just like to, you

19 know, follow up and reiterate that it's not just limited to his

20 danger to the community, like I discussed in detail.

21          And I could go further easily; or the flight risk.

22 It's also, as the Government pointed out, his constant providing

23 false information to our office.

24          I mean, even if Your Honor let him out with a

25 condition or certain conditions, much of it is developing trust

1   with him, being able to believe what he says.

2           And he's proven himself to you can't trust a word that

3   he says.  You know, again, another example from the PSR this is

4   a man who claims to be a Navy seal.

5           But when the PSI investigator did his due diligence,

6   it turns out he was never in combat in the military.  It's just

7   -- he's a conman.

8           You can't believe a word that he says.  Officer

9   Kerrissey tried to believe what he was saying about his

10  employment and what he was doing after his release.

11          But it turns out that none of it was true, or very

12  little of it was true, I should say.

13          So I don't believe there are any conditions that can

14  be set that we could work with him and have any type of

15  relationship that the probation office needs to have to work

16  with someone who is released, so we would be opposed to his

17  release in this case.

18          Your Honor, even -- you know, as defense suggested,

19  home incarceration or home detention, that involves us asking

20  the person what they need to do, why they need to leave their

21  home and we do our best to verify that it's true.

22          But it would be a handful with this, and it would be

23  essentially a constant surveillance to see if he was doing what

24  we could trust he says he's doing.

25          **MR. BAGLEY:**  Judge, home incarceration, there is --

1  you are not allowed to leave your house for any reason other
2  than to come to Court.
3         And unless Mr. Di Blasi is not going to be on
4  supervision ever again, then that -- I understand Mr. Taberski's
5  concern, but that's also part of their role.
6         And unless he's never going to be on supervision
7  again, then they are going to have to supervise him.  So that's
8  -- that's part and parcel of what this whole package entails,
9  Judge.
10         **THE COURT:**  All right.  I'm inclined to give the home
11  incarceration a chance.
12         Mr. Di Blasi, you know, as you probably gather, it
13  won't take me much to bring you back in here, so you are going
14  to go on home incarceration.
15         Mr. Taberski is going to supervise it.  And I don't
16  want a little hiccup out of you.
17         **THE DEFENDANT:**  Yes, Your Honor.
18         **THE COURT:**  Is that clear?
19         **THE DEFENDANT:**  Yes, Your Honor.
20         **THE COURT:**  All right.  Let's write it up that way,
21  Mr. Taberski, all right?
22         **PROBATION OFFICER:**  Okay.  And Judge, just to clarify,
23  it will be our location monitoring specialist Willy Bovie that
24  will supervise it.
25         **THE COURT:**  Right.  And it's going to be with GPS

1  monitoring.

2  **PROBATION OFFICER:**  Okay, Your Honor.

3  **THE COURT:**  All right.  All right.  Let's do that.
4  Now, what's next, do we need a preliminary hearing?

5  **MR. BAGLEY:**  No, Judge, we don't need a preliminary
6  hearing.  I think a status would be appropriate.

7  **THE COURT:**  Mr. Violanti, what would --

8  **MR. VIOLANTI:**  Judge, do you require -- if we can
9  resolve it, we haven't had much discussions regarding what --
10 because as Mr. Bagley indicated, there is the guideline range is
11 that high, I would anticipate a resolution of the matter.

12       Do you require a plea agreement or can you plea off
13 the petition?  Different judges do it --

14 **THE COURT:**  I'm pretty flexible, I can do it both
15 ways.

16 **MR. VIOLANTI:**  Okay.  Maybe a couple of weeks, Judge?
17 Is that enough, Mr. Bagley?

18 **MR. BAGLEY:**  Sure.

19 **THE COURT:**  Okay.  Let's come back in a couple of
20 weeks and see where we are.  Ms. Henry, what can we do?

21 **PROBATION OFFICER:**  Your Honor, I have a question for
22 the defense.  Just wondering if he will be residing at the same
23 residence that he was prior to his detention.

24 **MR. BAGLEY:**  Yes.

25 **PROBATION OFFICER:**  Thank you, Your Honor.

1         **THE COURT:**  Do you need anything else, Mr. Taberski,
2    to make this happen today?
3         **PROBATION OFFICER:**  No, Your Honor.
4         **THE COURT:**  Okay.  Thank you.  Thank you for your
5    input, everybody.  Let's come back here in two weeks and see
6    where we are.
7         **THE CLERK:**  How about May 6th at 9:30?
8         **MR. BAGLEY:**  Judge, that is the day of our -- our
9    entire office has a training that day.  If we could maybe go
10   into the next week.
11        **THE CLERK:**  How about, we could do it the 9th at 1:30?
12        **MR. BAGLEY:**  Judge, I'm sorry, I have a lot of
13   trainings that week.  I'm also in a training, I don't know about
14   the day before, the 5th?
15        **THE CLERK:**  The 5th, we could also do at 9:30.
16        **MR. BAGLEY:**  That would be great.  Thank you.
17        **THE COURT:**  Mr. Violanti?
18        **MR. VIOLANTI:**  Yeah, Judge, this is a AUSA
19   Leydecker's -- Meghan Leydecker's case, I'm filling in for her
20   today.  She got a procedure done.  But if she's not available,
21   I'm available May 5th at 9:30 to appear.
22        **THE COURT:**  May 5 at 9:30, we'll all be here and we'll
23   see where we are.
24        If there is something, you know, in advance of that,
25   if there is going to be a plea deal, you know, let us know and

1  we'll come out here ready for that, if that's where we're going.
2           **MR. VIOLANTI:**  Will do, Judge.
3           **THE COURT:**  All right.  So May 5, 9:30.
4           **MR. VIOLANTI:**  Thank you.
5           **MR. BAGLEY:**  Thank you, Judge.
6           **THE COURT:**  All right.  Thank you, folks.  Have a good
7  weekend.
8
9                  (Proceedings concluded at 11:21 a.m.)
10                          *   *   *

```
 1
 2       In accordance with 28, U.S.C., 753(b), I certify that these
 3     original notes are a true and correct record of proceedings in
 4      the United States District Court for the Western District of
 5          New York before the Honorable John L. Sinatra, Jr.
 6
 7
 8
 9
10     _s/ Bonnie S. Weber_           __May 30, 2023____
        Signature                          Date
11
12     BONNIE S. WEBER
13     Official Court Reporter
       United States District Court
14     Western District of New York
15
16
17
18
19
20
21
22
23
24
25
```