```
                   UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF NEW YORK


  UNITED STATES OF AMERICA,   *         Docket Number:
                                        21-CR-00148-JLS-1
                              *
                              *         Buffalo, New York
              v.              *         June 8, 2022
                              *         3:03 p.m.
                              *
  JOHN DI BLASI,              *         SENTENCING
                              *
              Defendant.      *
                              *
  *  *  *  *  *  *  *  *  *  *  *  *  *  *


                   TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE JOHN L. SINATRA, JR.
                   UNITED STATES DISTRICT JUDGE



APPEARANCES:


For the Government:          TRINI E. ROSS,
                             UNITED STATES ATTORNEY,
                             By MEGHAN LEYDECKER, ESQ.,
                             Federal Centre,
                             138 Delaware Avenue,
                             Buffalo, New York  14202,
                             Appearing for the United States.



For the Defendant:           FEDERAL PUBLIC DEFENDER'S OFFICE
                             By JEFFREY T. BAGLEY, ESQ.,
                             Assistant Federal Public Defender,
                             300 Pearl Street,
                             Suite 200,
                             Buffalo, New York   14202.



The Courtroom Deputy:        KIRSTIE L. HENRY
```

```
 1   The Court Reporter:              BONNIE S. WEBER, RPR,
                                      Notary Public,
 2                                    Robert H. Jackson Courthouse,
                                      2 Niagara Square,
 3                                    Buffalo, New York  14202,
                                      Bonnie_Weber@nywd.uscourts.gov.
 4

 5                Proceedings recorded by mechanical stenography,
                        transcript produced by computer.
 6

 7                   (Proceedings commenced at 3:03 p.m.)

 8

 9           THE CLERK:  All rise.

10           The United States District Court for the Western

11   District of New York is now in session.  The Honorable John

12   Sinatra presiding.

13           THE COURT:  Please be seated.

14           THE CLERK:  United States versus John Di Blasi,

15   Case Number 21-CR-148.  This is a date set for sentencing on

16   violation of supervised release.

17           Counsel, please state your appearances.

18           MS. LEYDECKER:  Good afternoon, Your Honor.

19   Meghan Leydecker on behalf of the Government.

20           MR. BAGLEY:  Good afternoon, Judge.  Jeff Bagley for

21   Mr. John Di Blasi.

22           THE COURT:  Good afternoon, counsel.

23           Good afternoon, Mr. Di Blasi.

24           THE DEFENDANT:  Good afternoon, Your Honor.

25           THE COURT:  We're here today for sentencing on
```

1   Mr. Di Blasi's previous plea of guilty to violating the

2   condition of his supervised release.

3          On June 13, 2019, in the United States District Court

4   for the Southern District of Georgia.  Mr. Di Blasi was

5   sentenced to 33 months in imprisonment and then three years of

6   supervised release.

7          The supervised release included substance abuse

8   testing, mental health treatment, search and drug treatment

9   special conditions.

10          Mr. Di Blasi is also subject to the standard and

11   mandatory conditions of supervised released.  He began

12   supervision on June 18, 2021.

13          On April 15, 2022, the Court received a petition for

14   offender under supervision alleging violations of supervised

15   release conditions.

16          Later, the Court received amended petitions, including

17   the second amended petition, which is the operative one here.

18          Mr. Di Blasi has been detained pending the outcome of

19   the violation proceedings since May 11, 2022.

20          On May 26, 2022, Mr. Di Blasi admitted to Charge 1 in

21   the second amended petition, specifically that he failed to

22   comply with the condition regarding notifying the probation

23   officer of changes to where he works or anything else about his

24   work, such as his position or job responsibilities, within a

25   specified period of time.  He remained remanded to the custody

1    of the U.S. Marshals pending sentencing.

2          Mr. Bagley, did you receive a copy of the probation

3    officer's final report for violation of supervised release

4    sentencing dated June 2, 2022?

5          **MR. BAGLEY:**  Yes, Judge.

6          **THE COURT:**  Okay.  And did you have a chance to review

7    it with your client?

8          **MR. BAGLEY:**  Yes, Judge.

9          **THE COURT:**  Mr. Di Blasi, did you receive a copy of

10   this final report as well?

11         **THE DEFENDANT:**  Yes, I have, Your Honor.

12         **THE COURT:**  Did you review it?

13         **THE DEFENDANT:**  Yes, Your Honor.

14         **THE COURT:**  And did you go over it with your lawyer?

15         **THE DEFENDANT:**  Yes, sir.

16         **THE COURT:**  Ms. Leydecker, did you receive a copy of

17   this report as well?

18         **MS. LEYDECKER:**  I did, Your Honor.

19         **THE COURT:**  Okay.  I will now place the report in the

20   record under seal.

21         If an appeal is filed, counsel on appeal will be

22   permitted access to the sealed final report, but not access to

23   the recommendation.

24         Mr. Bagley, do you have any objections to the factual

25   statements contained in the final report?

1          **MR. BAGLEY:**  No.

2          **THE COURT:**  Ms. Leydecker, how about you?

3          **MS. LEYDECKER:**  No, Your Honor.

4          **THE COURT:**  I adopt the statements as set forth in the

5    probation officer's final report as my findings of fact.

6          Mr. Bagley, do you have any objections to the

7    conclusions regarding the applicable sentencing guidelines

8    contained in the final report?

9          **MR. BAGLEY:**  I do not, Judge.

10          **THE COURT:**  Okay.  Same question for you,

11    Ms. Leydecker.

12          **MS. LEYDECKER:**  No, Your Honor.

13          **THE COURT:**  I adopt the final report's conclusions

14    regarding the applicable sentencing guidelines and incorporate

15    them into the record.

16          Mr. Di Blasi admitted to a Grade C violation.  Upon

17    finding a Grade C violation, under the guidelines, I may either

18    revoke supervised release or extend the term of supervised

19    release and/or modify the conditions of supervision.

20          According to application note one of Guideline Section

21    7B1.4, the criminal history category used to calculate the range

22    of imprisonment for a violation is the same criminal history

23    category that applied at sentencing on the underlying offense.

24          That means that Mr. Di Blasi's a criminal history

25    Category One.

1                Pursuant to the revocation table that appears in

2     Guideline Section 7B1.4, a Grade C violation with a criminal

3     history category of one results in an imprisonment range of

4     three to nine months.

5                18 United States Code 3583(e)(3) sets the maximum

6     under the statute, a maximum imprisonment upon revocation for a

7     Class C felony at two years.

8                Guideline Section 7B1.3(c)(1) provides that where the

9     minimum term of imprisonment determined under 7B1.4 is at least

10    one month, but not more than six months.

11               A minimum term may be satisfied either by a sentence

12    of imprisonment or a sentence of imprisonment that includes a

13    term of supervised release with a condition that substitutes

14    community confinement or home detention for any portion of the

15    minimum term.

16               18 U.S.C. 3583(h) instructs that if the Court revokes

17    supervised release, it may require a defendant to serve more

18    time on supervised release after serving any prison term, not to

19    exceed the maximum supervised release term authorized by

20    statute.  Here, that's three years.

21               Mr. Bagley, I've received and reviewed your client's

22    letter and the letters written on his behalf by Jeffrey

23    Forester, Paul and Anne Salzer, Carly Moore (phonetic) -- I'm

24    pronouncing that right -- and Dr. Blanche McCreary (phonetic).

25               Is there anything else that your client wants to

1   submit in writing?

2        **MR. BAGLEY:**  No, Judge.

3        **THE COURT:**  Ms. Leydecker, does the Government wish to

4   submit anything in writing?

5        **MS. LEYDECKER:**  No, Your Honor.

6        **THE COURT:**  Okay.  Ms. Leydecker, what would you like

7   to say on behalf of the Government?

8        **MS. LEYDECKER:**  Your Honor, the Government is

9   requesting that the Court sentence the defendant to both a

10  period of incarceration within the guidelines range that is

11  contemplated by the plea agreement, then to be followed by the

12  maximum period of supervised release allowable.

13        In this case, I believe that would be three years

14  minus any term of incarceration he is ordered to serve.

15        In rendering its sentence, we're asking that the Court

16  consider, number one, the defendant's repeated lying and

17  misstatements that he's made to his probation officer throughout

18  the course of the pendency of this case and the months leading

19  up to the violation that's been filed here.

20        Also, I'd ask the Court to consider the defendant's

21  seeming obsession with treating patients as a doctor, even

22  though, at least currently, he does not have a medical license

23  and he's not able to practice.

24        And that is evidenced by his conduct here in this

25  case, and it's further evidenced by the letter that he submitted

1   to the Court in docket 14-1, dated June 1st, 2022, when he just

2   seemingly emphasizes the fact that he's looking forward to being

3   a better doctor and to treating patients.

4           That's part of the reason that we're in the situation

5   that he's in, is that here, he was acting as a licensed massage

6   therapist, when he was not licensed.

7           At the time, he was not a licensed doctor either.  And

8   he went ahead and he treated patients as a massage therapist

9   anyway.

10          So, it's the Government's position that a period of

11  incarceration is necessary to first show the defendant the

12  severity of the -- this offense here.

13          And then also a period of lengthy supervised release

14  is necessary in order to make sure that the defendant is abiding

15  the law and to ensure the safety of the community.

16          **THE COURT:**  Mr. Taberski, would you like to say

17  anything other than what's in the final report?

18          **PROBATION OFFICER:**  I have nothing to add to the final

19  report, Your Honor.

20          **THE COURT:**  Thank you.

21          Mr. Bagley, what would you like to say?  And in the

22  meantime, a couple of questions to think about commenting on,

23  whether I should impose an additional term of supervised release

24  and whether I should include special conditions of substance

25  abuse testing and treatment, mental health treatment, search,

1   and a requirement that he notify any employer if he's employed

2   in the medical or healthcare field and home detention.

3          So, address those as you see fit, and then tell me

4   what the sentence ought to be.

5          **MR. BAGLEY:**  Sure, Judge.  So, I spoke with

6   Mr. Di Blasi moments before this proceeding today and I asked

7   him, you know, let's say things go as well as possible today and

8   you are able to get released, what's the plan?

9          And he had a response immediately for me, Judge,

10  without any coaching from me, without me telling him what to

11  say, anything of that nature.

12         Judge, he immediately spit out that in the interim,

13  between the time that he was on release in this case and then

14  the time that he was detained, he had called up Aries

15  Transportation, which does transportation for disabled veterans.

16         He had talked with them on the phone, done what

17  amounts to a phone interview with them.

18         He told them, Judge, that he has a felony and whether

19  or not he could still be employed by this company.

20         They responded in the affirmative.  That he indeed

21  could be employed, that he just needed to get his commercial

22  license.

23         So that -- and Mr. Di Blasi also mentioned that he had

24  a commercial license in the past, so he knows the process.  He's

25  got to take an exam and he's ready and willing to do that.

1          So he knows, Judge, that he can't go out and -- if

2    released today, he can't go out and engage in conduct that is

3    obviously medicine or, Judge, really even on the peripheries of

4    medicine.

5          That's the reason that he's sitting here next to me,

6    Judge, in stripes and cuffs and a chain around his waist, Judge.

7          I don't know that there is a stronger way to make that

8    point known.

9          As a defense attorney, Judge, I tend to think that I

10   kind of wish that there were other ways that we could make

11   points known rather than detaining people and putting them in

12   jail and taking away their liberty.

13         But the point I think is made regardless of whether or

14   not there was a better way to do it, Judge, that he can't do

15   that type of work, at least not until he goes through any kind

16   of proper channels that he may be able to in the future, Judge.

17         And I don't know what those channels would be.  I'm

18   not that kind of an attorney, Judge.

19         I do know that he does have something pending with the

20   Department of Education.  They handle, basically, the

21   certification and licensure requirements for medical

22   professionals, Judge.

23         So I know that there is a process that's happening

24   tangential with this one, Judge.

25         But the point is -- maybe I'm being longwinded, and it

1   is that Mr. Di Blasi has a concrete plan to do something that

2   does not involve the medical field.

3          And I understand he signed his letter with his -- with

4   his title and with the degrees that he's had.  I understand why

5   the prosecutor points that out.

6          All I'd say to that, Judge, is look, it's difficult, I

7   think, for somebody who has spent their whole lives kind of

8   chasing one identity to drop that.

9          And, obviously, Mr. Di Blasi has to do that.  And he

10  will do that.

11         But not to excuse it, Judge, obviously, but to explain

12  it.  You know, this is who Mr. Di Blasi was for a long period of

13  his life, he was a doctor.

14         Just like me or you or Ms. Leydecker, I think it might

15  be difficult to have an identity outside of being an attorney.

16  I think Mr. Di Blasi struggles with having an identity outside

17  of being a doctor.

18         And I understand that's gotten him into trouble in

19  more ways that one, Judge, but I also think that it's somewhat

20  understandable why somebody in his position would struggle with

21  something like that.

22         So, you know, we're not opposed to further

23  supervision, if that's what the Court is considering.

24         That's what the Government wants.  I would ask though,

25  Judge, that if the Court is going to impose further supervision,

1    that it -- that it impose a sentence.

2          Mr. Di Blasi's now been detained for a month and a

3    half -- I'm sorry, a month and a day.  He was also on home

4    incarceration for about three weeks.

5          I spoke with Ms. Mariano, who substituted for me one

6    day when I couldn't be here.  And if her recollection is

7    correct, which I have no reason to doubt, Judge, is that the

8    Court considered releasing Mr. Di Blasi again, on that occasion.

9          And it was somewhat of a difficult choice, I think on

10   both fronts; both to release him the first time and then to put

11   him in jail the second time.

12         Had that gone the other way, Mr. Di Blasi would have

13   been here sitting here next to me without having spent that

14   month in jail, but now he has.

15         And I think that that would be an appropriate

16   culmination to this charge.

17         I also think, Judge, that if the Court weren't

18   inclined to do that, then I'd ask the Court to consider one

19   month of whatever the time served is, Judge, is one month and

20   one day, but then impose some sort of time that -- of home -- I

21   guess it would have to be home detention, because I think

22   Mr. Di Blasi ought to be able to try to get employment and

23   support himself.  So -- and carry through with this plan.

24         So perhaps the remainder could be -- the guidelines

25   provide for that.  It's still a guideline sentence.

1          It's not even a below guideline sentence, where it's a

2    mixed sentence between incarceration, which he's already done,

3    and home detention with the ability to work, or incarceration

4    with the ability to work to make up for the remainder --

5    something that would put that into the guidelines, Judge.

6          So I don't know that I've answered your questions.  I

7    know I addressed a couple of them.  If there are still some out

8    there, Judge, I'm happy to comment on them.

9          **THE COURT:**  You suggest or your hope that maybe there

10   ought to be some other way to get through to your client -- to

11   get through to people generally is one topic.

12          But to get through to your client here, today, other

13   than incarceration, and what is that way?

14          How do I get through to this guy?

15          **MR. BAGLEY:**  Well, Judge, I don't know that I have an

16   answer for you.

17          I do know that he -- we've got incarceration already,

18   so that was part of my -- I think part of my suggestion was

19   that, you know, maybe there is another way, maybe there isn't.

20          But in this case, we've already got a month of

21   incarceration -- a month and day at Chautauqua County Jail.  And

22   I know that is not a pleasant place to be.  I've talked to

23   Mr. Di Blasi about it.

24          He did spend a significant amount of time in the

25   Bureau of Prisons.  But as the Court knows, jail life is

1   different than prison life.

2          And especially for somebody kind of in his position,

3   with a criminal history of one, and -- you know, more along the

4   lines of a white collar type of crime, Judge.

5          So, you know, jail is no picnic, Judge, and he's been

6   in there a month.  So, to the extent there isn't another way, we

7   don't have to worry about it, because he's already -- we've

8   already gotten one month of hopefully a lesson learned, Judge.

9          **THE COURT:**  Ms. Leydecker, by the way, are there any

10  victims who wish to be heard at this point?

11         **MS. LEYDECKER:**  No, Your Honor.

12         **THE COURT:**  Okay.  Mr. Di Blasi, what would you like

13  to say on your behalf?

14         **THE DEFENDANT:**  Your Honor, I'm very humbled by this

15  whole experience.  And as that letter I wrote to you, addressed

16  to you, given through my attorney, I do want to clarify that I

17  have no intention of practicing medicine without a license, nor

18  massage therapy.

19         That lesson was very hard learned when I was somewhat

20  convinced that I was okay doing that in a manner that I did with

21  the Spa at Falling Waters.  That was a misunderstanding that I

22  very much learned from.

23         By no means will I go back out in this community and

24  try to do anything medical without the proper licensure or

25  credentialing, including something as simple as my CPR

1    recertification.

2          I was an American Heart Association instructor when I

3    was in the military and I know what it takes to do all the

4    little credentialing things.

5          So I apologize if that was a misunderstanding in my

6    signature on the letter.  It is a force of habit, I do sign my

7    name Dr. Johnny Di Blasi.

8          That's just been my -- a force of habit and if that's

9    required by the Court for me to no longer use that credential,

10    by all means I'm willing and humbled to do so.

11          I can appreciate the perception of that on behalf of

12    Ms. Leydecker over here, and I will do whatever it takes to be

13    compliant to terms of your Court requirements.

14          I was tested for drug and alcohol well over a dozen

15    times through the probation office and never failed a test,

16    because I don't do drugs or abuse alcohol.

17          So I would appreciate the opportunity to very humbly

18    reenter into society; help out in any way I can in my community,

19    and be gainfully employed and a taxpayer, as I was.

20          I thank you for the time to express my thoughts and

21    clarify, hopefully.

22          **THE COURT:**  It is the judgment of this Court that

23    Mr. Di Blasi's term of supervised release is revoked and he is

24    sentenced to the custody of the Bureau of Prisons for a term of

25    time served.

1          In addition, upon release he shall be placed on

2    supervised release for a term of 30 months with the first four

3    months to be served on home detention.

4          So the new period is 30 months, first four months on

5    home detention.  Obviously, we'll allow him to get his driver's

6    license -- commercial driver's license and get that job, if he

7    wants it.

8          I'm going to state the rest of the conditions first

9    and then go back and talk about reasons.

10          Within 72 hours of release, you shall report in person

11   to the probation office where you are authorized to reside

12   unless your probation officer instructs you differently.

13          You shall comply with the standard conditions of

14   supervised release adopted by this Court.

15          You shall not commit any crimes under Federal, State

16   or Local law.

17          You shall not possess a firearm, ammunition or any

18   other dangerous device.  You shall not unlawfully possess a

19   controlled substance.

20          And regarding special conditions, since it was brought

21   up here today, basically by Mr. Bagley, Mr. Di Blasi, I'm going

22   to require that he follow any Department of Education or other

23   State rules regarding how he holds himself out to the public,

24   whether as a doctor or any other role that requires a license.

25          So, if there's a rule out there, he's got to follow

1    it.  If he doesn't follow it, that's a violation, okay.

2          He shall comply with the conditions of the location

3    monitoring program, the home detention component for the first

4    four months.

5          And he shall wear an electronic monitoring device and

6    shall follow the monitoring procedures as outlined in probation

7    form 61.

8          He must contribute to the cost of services rendered.

9    This condition serves the statutory sentencing purposes of

10   public protection and deterrence.

11         And I defer to probation's judgment on whether it

12   needs to be radio frequency or GPS monitor.

13         Mr. Di Blasi shall participate in a program for

14   substance abuse, including substance abuse testing such as

15   urinalysis and other testing, and shall undergo a drug and

16   alcohol evaluation and treatment if substance abuse is indicated

17   by the testing.

18         The probation officer will supervise the details of

19   any testing and treatment, including the selection of a

20   treatment provider and schedule.

21         But if inpatient treatment is recommended, I must

22   approve it, unless Mr. Di Blasi consents.

23         He is not to leave any treatment until completion or

24   is ordered by the Court.

25         While in treatment and after discharge, he is to

1    abstain from the use of alcohol.  He must contribute to the cost

2    of services rendered.

3          This condition serves the statutory sentencing

4    purposes of public protection and deterrence and rehabilitation.

5          He shall participate in a mental health treatment

6    program, including a mental health evaluation and any treatment

7    recommended.

8          The probation officer will supervise the details of

9    any testing and treatment, including the selection of a provider

10   and a schedule.

11         If inpatient treatment is recommended, I must approve

12   it, unless Mr. Di Blasi consents.  He is not to leave any

13   treatment until completion or as ordered by the Court.

14         While in treatment or taking any psychotropic

15   medication, he shall abstain from the use of alcohol.

16         He must contribute to the cost of services rendered.

17   This condition serves the statutory sentencing purposes of

18   public protection and deterrence and rehabilitation.

19         Mr. Di Blasi shall submit to a search of his person,

20   property, vehicle, place of residence or any other property

21   under his control based upon reasonable suspicion and shall

22   permit confiscation of any evidence of contraband discovered.

23         This condition serves the statutory sentencing

24   purposes of public protection and deterrence.

25         If Mr. Di Blasi's employment is in a medical or

 1    healthcare related field, he must notify his employer of his

 2    offense, which will be verified by the U.S. Probation Office.

 3          This condition serves the statutory sentencing

 4    purposes of public protection and deterrence.

 5          And I'm going to give you a little footnote here,

 6    Mr. Di Blasi, if you are not sure about this condition or any

 7    other condition, call your probation officer, because I don't

 8    think they or I have any sense of humor about any of this

 9    anymore, okay?

10          **THE DEFENDANT:**  Yes, sir.

11          **THE COURT:**  And I think you probably have gathered

12    that by now.

13          **THE DEFENDANT:**  Yes, Your Honor.

14          **THE COURT:**  To arrive at this sentence, I calculated

15    the applicable sentencing guidelines that I mentioned earlier.

16          I considered the guidelines, as well as the sentencing

17    factors set forth in the sentencing statute as limited by

18    subsection E.

19          I find that the sentence imposed here today is

20    sufficient, but not greater than necessary based on the

21    sentencing factors, again, set forth in 3553A, limited by E.

22          I'm imposing this sentence for several reasons.

23    Obviously, your lack of honesty with the probation office and

24    admitted violation of the conditions are a breach of the Court's

25    trust and the sentence is attempting to reflect that breach of

1   trust.

2        This relationship that you have with the Court and

3   with the probation office is an important one, and it just

4   doesn't function if you are not being honest with them, so we

5   are taking that seriously.

6        This lack of honesty was not a one-time occurrence.

7   It involved four months of deceit.  The sustained nature of the

8   conduct indicates the need for the sentence imposed to deter you

9   and others from engaging in similar conduct in the future.

10       The supervision system only works when there are open

11  lines of communication and trust between the defendant, the

12  person under supervision, and the probation office.

13       Lack of honesty prevents the system from working as

14  it's intended.  It impacts the public.

15       You know, the lack of honesty here enabled you to work

16  somewhere that you shouldn't have been working and without the

17  probation office's knowledge.

18       I considered just a few weeks ago a case a lot like

19  yours, Mr. Di Blasi, where the incarceration term was longer.

20  It was two months.

21       So what's different here?  You know, I just said

22  something that actually makes your case worse, which is that you

23  were interacting with the public in a way that you shouldn't

24  have, that would have counselled in favor of a longer

25  incarceration term.

1         On the other hand, your letters in support paint you

2    in a better light than without them, and I've taken that into

3    account in terms of your personal characteristics.  I read them

4    this morning, but I can't seem to find them right now.

5         In light of these circumstances, the sentence on the

6    violation is sufficient, but not greater than necessary to deter

7    future criminal conduct and to protect the public.  I'm not sure

8    it is a guideline sentence.

9         Mr. Taberski, is this a guideline sentence after all

10   or not?

11        **PROBATION OFFICER:**  One moment, Your Honor.

12        **THE COURT:**  You think it is?  I'm not sure.  I need to

13   make a finding on whether it is or isn't, but --

14        **MR. BAGLEY:**  Judge, unlike your courtroom deputy,

15   Ms. Henry, I have been wrong before, so -- I mean, it's possible

16   that I am.  I thought, Judge, that the Court could combine the

17   two.

18        **PROBATION OFFICER:**  That's correct, Your Honor.  It is

19   a guideline sentence.  Although for a revocation hearing, Your

20   Honor would not need to note on the record whether it is or not.

21        But with the combination of the home detention and the

22   time served, it is.

23        **THE COURT:**  Okay.  And that's why I'm asking, solely

24   whether I need to recognize whether it's a guideline sentence or

25   not, but since --

1          **PROBATION OFFICER:**  It is, Your Honor.

2          **THE COURT:**  -- it is and I don't need to recognize it

3    either way, right?  Okay.

4          **MR. BAGLEY:**  Judge, can I just ask for clarification

5    on one point?

6          **THE COURT:**  Sure.

7          **MR. BAGLEY:**  The search condition, is that based on

8    reasonable suspicion?

9          And if not, Judge, I would ask that you would impose

10   it based only on reasonable suspicion of criminal or suspicious

11   activity.

12         **THE COURT:**  I don't know if I said it or not, but it

13   usually is only that way, right, Mr. Taberski?

14         **PROBATION OFFICER:**  Yes, Your Honor.

15         **THE COURT:**  Yeah.  It should be reflected that way in

16   the judgment.

17         **MR. BAGLEY:**  Thank you, Judge.

18         **THE COURT:**  Okay.

19         Mr. Di Blasi, I must advise you that you have a right

20   to appeal your sentence under certain circumstances,

21   particularly if you think your sentence is contrary to law.

22         A defendant may waive those rights as part of a plea

23   agreement.  As I think you recognize, you entered into a plea

24   agreement where you waived some of your rights to appeal.

25         Specifically, you waived all rights to appeal a

1    sentence that falls within or is less than the guidelines range

2    of imprisonment calculated in the plea agreement, which was

3    three to nine months.

4            These waivers are generally enforceable, but if you

5    believe the waiver is unenforceable, you can present that theory

6    to the Appellate Court.

7            If you want to try to appeal some issue that you

8    believe survives your waiver, you must file a notice of appeal

9    within either 14 days of the entry of the judgment or within

10   14 days of the Government filing a notice of appeal, whichever

11   is later.

12           If you request, the clerk must prepare and file a

13   notice of appeal on your behalf.  If you are unable to pay the

14   costs of an appeal, you may apply for leave to appeal without

15   paying costs.

16           You have the right to be represented by counsel on any

17   appeal.  And if you can't afford counsel, you have the right to

18   have counsel appointed to represent you.

19           And if you can't afford to pay the cost of an appeal,

20   you may apply for leave to appeal without paying those costs.

21           Ms. Leydecker, do you wish to make a motion regarding

22   the second amended petition?

23           **MS. LEYDECKER:**  Yes, Your Honor.  At this time, the

24   Government is moving to dismiss charges two, three and four of

25   the second amended petition for offender under supervision.

1          **THE COURT:**  Okay.  That motion is granted.

2          Do you have anything further?

3          **MS. LEYDECKER:**  I do not, Your Honor.

4          **THE COURT:**  Mr. Bagley, do you have any further?

5          **MR. BAGLEY:**  No, Judge.  Thank you.

6          **THE COURT:**  Okay.  An amended judgement will be

7  prepared promptly on the form prescribed for judgments.

8          Mr. Di Blasi, I wish you well.  Take your lawyer's

9  advice.  I'm sure he will give it to you as to how you approach

10  your interactions and your supervision going forward, all right?

11          **MR. BAGLEY:**  Thank you, Your Honor.

12          **THE DEFENDANT:**  Thank you.

13          **MS. LEYDECKER:**  Thank you, Judge.

14

15          (Proceedings concluded at 3:34 p.m.)

16                    *   *   *

17

18

19

20

21

22

23

24

25

1

2      In accordance with 28, U.S.C., 753(b), I certify that these

3   original notes are a true and correct record of proceedings in

4    the United States District Court for the Western District of

5        New York before the Honorable John L. Sinatra, Jr.

6

7

8

9

10    _s/ Bonnie S. Weber_              _May 30, 2023_
       Signature                        Date

11

12   BONNIE S. WEBER

13   Official Court Reporter
     United States District Court
14   Western District of New York

15

16

17

18

19

20

21

22

23

24

25